## Finley *v.* McNair et al., Appellants.

Argued April 30, 1937.

162

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*Anne X. Alpern*, First Assistant City Solicitor, with her *John J. Kennedy*, City Solicitor, for appellants.

*C. Elmer Bown*, for appellee.

OPINION BY PARKER, J., July 15, 1937:

In this action of mandamus, Charles A. Finley, a former employee of the city of Pittsburgh, sought to compel the payment to him of certain installments of a pension which had been granted him. The defendants filed a return and plaintiff demurred to the answer which was deemed insufficient by the court below. Thereupon a peremptory writ of mandamus was issued granting the relief asked for in the original petition. The defendants have appealed to this court.

On December 15, 1931, plaintiff, after 28 years of service with the city of Pittsburgh, reached an age which made him eligible to receive a pension. A pension was granted him and the installments were paid

from January 1, 1932, to May 1, 1935. At the latter date payment was discontinued until February 1, 1936, It is for that period that plaintiff seeks payment. In 1924 plaintiff was appointed chairman of a Traction Conference Board at a salary of $12,000 per year and continued in that position until the abolition of the board on February 1, 1936. From January 1, 1932, until May 1, 1935, he received both salary and pension.

The defendants insist that the plaintiff, while serving as a member of the Traction Conference Board, was an employee of the city and hence ineligible for a pension. We agree with the conclusion of the court below that defendants' position is not tenable.

It is first necessary to ascertain the nature of the position occupied by plaintiff as a member of the board in question. The Traction Conference Board was created in an agreement between the city of Pittsburgh, the Philadelphia Company, and the Pittsburgh Railways Company which had to do with a reorganization and future operations of the last named company and the repayment to the city of a considerable sum of money due it from the street railway company. The agreement was authorized by Act of April 15, 1907, P. L. 80 (67 PS 1256) and an ordinance of the city of Pittsburgh. By that agreement the board consisted of four members, two appointed by the mayor of Pittsburgh with the consent of council, one of whom was chairman, one by other interested municipalities, and one selected by the reorganized company. Each member was to hold office at the pleasure of the appointing power. In case of a tie, the vote of the member appointed by the company did not count. All expenses of the board, including the salaries of the members, were to be paid by the company. The board had broad powers in controlling the operations of the street railway company. The company, in the expenditure of five million dollars provided for betterments, improve-

ments, and rehabilitation of the street railway system, was required to have the approval of the board, and the annual budget of the company was subject to revision by the board. It had access to the company's books and was to consult with its officers as to "service, facilities, leases and charges" and was required to recommend changes and improvements in the company's service.

As the learned judge of the court below points out, it is evident from a perusal of the agreement that the conference board was an "independent body, created by the signatories to the agreement, and designed to supervise and regulate the operation of a public utility in the interest, not merely of the City of Pittsburgh and its citizens but of the public served by such utility." It was required to exercise independent judgment. We search the agreement in vain for any indication of power upon the part of the city to control the exercise of discretion on the part of the board either as to means or manner of performance or as to any specific action to be taken. We find none of the indicia of master and servant or principal and agent save the power to discharge. While this board existed partly in the interest of the city, it was also to function in the interest of the citizens of that and other municipalities.

As was pointed out in the opinion filed below, if those interested were not satisfied with the action of the board on the annual budget a provision was made for arbitration. While a provision as to payment of salaries of members of the board by the company rather than the city was not conclusive as to the status of the members, it was entitled to be given some weight in determining whether the plaintiff was an employee of the city. We agree with the court below in the conclusion that the relationship of the board to the parties to the agreement is comparable to that of arbitrators. Certainly persons chosen to act as arbitrators are not considered

as employees of the parties. The very nature of their position rebuts the inference that the members of the board were to be under the control of the city as to the manner of performance or means to be employed, much less that they should act as dictated by the city. The members of this board were obligated to deal fairly with and consider the welfare of the utility just as they were with respect to the city and the public.

Again, the city has placed its own interpretation on this provision by placing the plaintiff on the pension list and continuing to pay him both pension and salary for over three years. "The interpretation given by the parties themselves to the contract as shown by their acts will be adopted by the court, and to this end not only the acts but the declarations of the parties may be considered. But if the meaning of the contract is plain, the acts of the parties cannot prove a construction contrary to the plain meaning": 2 Williston on Contracts, §623.

We assume for the sake of argument the right of the pension board to suspend the pensions of persons subsequently entering the employ of the city. By §3 of the Act of April 26, 1933, P. L. 81 (53 PS 9422a), the pension board *may* suspend pension payments of those employed by the federal government, by the Commonwealth, or by the same county in which the cities are located. This would seem to indicate that the legislature assumed that the board might suspend payment of pensions to those subsequently employed by the city. So assuming, we are satisfied that the plaintiff was not an employee of the city of Pittsburgh.

The language used by Mr. Justice LINN in the case of *Finley v. McNair,* 317 Pa. 278, 176 A. 10, where it was held that this same plaintiff as a member of the conference board was not a public officer within the meaning of that term as fixed by the Constitution of this Commonwealth, is pertinent (p. 282): "Un-

doubtedly, Finley occupied a position; he was employed. But the position was not created by the Constitution, by statute, or by the authorized delegation to a subordinate by any public officer of part of his governmental powers; it was created by the Philadelphia Company and the Pittsburgh Railways, as much as by the city. The duties of the members of the board cannot be said to be performed under the legislative, the judicial or the executive department of government ...... The conduct of a street railway is not a municipal function, nor has the city taken over its operation. It may be said that it joined with other municipalities and with a company, apparently unable much longer to go on, in an arrangement relieving the immediate burden, in the hope that improvement in the railway system and car service could be worked out...... Tried, now, by the standards referred to above, we have the members of this board acting, not for one, but for all the contracting municipalities, and for the company, in the management of an enterprise not conducted by the municipality; they are not employed in the performance of a municipal function or doing anything of a governmental nature; their terms of office are little better than at will; their compensation is paid, not by the municipalities, but by the railway company; no oath or bond is required; their duties are not prescribed by any statute." All that was said by Mr. Justice LINN in that case is applicable here. We are all of the opinion that the plaintiff's position as a member of the conference board did not make him an employee of the city.

Judgment affirmed.